YELVERTON,, Judge.
C.H. Fenstermaker, a civil engineer, sued Joseph Regard and Daniel Regard, brothers, claiming an open account indebtedness for engineering and surveying work. One of the brothers, Joseph Regard, a contractor, reconvened for an amount which he claimed he had earlier paid Fenstermaker by mistake. By way of an alternative re-conventional demand, Contractor Regard and the other brother, Daniel, an attorney, demanded an amount allegedly owed them for contracting and legal services done for Fenstermaker. The trial judge, after a trial on the merits, rejected both the principal and the reconventional demands. All parties appealed. We affirm the trial court’s dismissal of the principal demand and. the dismissal of the alternative reconventional demands. We reverse the dismissal of the reconventional demand of Contractor Regard for money paid by mistake, and award him judgment in the amount of $1021.17.
The lawsuit was a product of an oral contract between these three parties made in early 1978. They agreed — and this much is undisputed — that they would invest their time and money in a joint undertaking to develop some property in Lafayette, known as Regency Square, giving their professional services to the project at no charge to each other, but sharing the actual expenses three ways, 50 percent to be paid by Fenstermaker, and 25 percent each to be paid by the Regard brothers. Fenstermaker would do the engineering and survey work incident to the property, Attorney Regard would do the legal work, and the other Regard would be general contractor supervising the construction of the improvements. There came a time when they could not agree over particular cost items, whether they were professional services or expenses, and that is what brought on this litigation.
For the first approximate year and a half after this agreement was made, things went smoothly. All three did the work expected of them. Attorney Regard drew up the acts of sale and associated mortgages for the purchase of the property, which was purchased in Engineer Fenstermaker’s name on May 4, 1978. Attorney Regard did not charge for his legal services, but he submitted an invoice to Fenstermaker for one-half of the cost of the abstract and the fees for recording the acts of sale. This invoice was paid without complaint.
As work on Regency Square progressed, all parties submitted bills or made requests to the others for sums which had been expended for materials, subcontractors and other cash expenses associated with the project. Each party promptly submitted his pro-rata share of the expenses as requested. Reimbursement was frequently made on oral request with the related invoice delivered later.
During this time, Fenstermaker performed other engineering services for the Regards besides those connected with the Regency Square partnership, and invoices for those services were rendered, and paid, as the services were performed.
Fenstermaker decided to build a building on a portion of Regency Square in 1979. It was understood by everyone that this building was Fenstermaker’s separate business undertaking unrelated to the partnership except by location, and that the land on which the building was put would in a later partition be his. Attorney Regard was asked to do the legal work necessary for both the interim and permanent financing for the building. He examined title and rendered an opinion to the bank, and billed Fenstermaker for $2,000, based upon a standard fee of one-half of one percent of *1139 the total mortgage loan of $400,000. Fen-stermaker became upset over this bill and refused to pay it. He testified that he did not object to paying a legal fee for the title opinion based on the value of the services rendered, but that he objected to a fee based on a percentage of the mortgage. It was this dispute that triggered the breakdown of the relationship between the Regards and Fenstermaker.
Not long after this, in February of 1980, Fenstermaker verbally asked Contractor Regard to pay his portion of what was represented to be the current engineering expense for the Regency Square project, totalling $4,084.68. Contractor Regard testified that he was surprised at the bill, but that he was not going to jeopardize the project over what he considered to be an insignificant amount when compared to the overall project. He paid his 25 percent, or $1021.17. He later discussed the bill with his brother, Attorney Regard, who refused to pay his portion. Attorney Regard considered the bill as the type of expense which was to be performed without charge. Fenstermaker’s bill, as evidenced by one of the invoices included with his demand letter before suit, was for engineering services performed during the period from March to September of 1979.
On March 27, 1980, a counter letter was recorded in Lafayette Parish putting of record the Regard brothers interest in the Regency Square property. By this instrument, the Regards each acknowledged his obligation to pay one-fourth of the notes secured by mortgages placed upon the property when it was purchased in 1978 in Fenstermaker’s name. However, Fenster-maker and his wife assumed all liability for the $400,000 mortgage placed upon the property by him when he financed his building. A partial voluntary partition was also entered into by the parties on March 27, 1980. Attorney Regard billed Fenster-maker for one-half of the cost of recording these documents but did not bill him for his services for drafting these documents.
The remainder of the Regency Square property was voluntarily partitioned on September 30, 1980. Attorney Regard billed Fenstermaker for one-half of the recording costs, but did not charge him for his services for drafting the document.
In August 1981 Fenstermaker submitted a bill to the partnership for $1,011.30 for engineering work done in March of that year. Both Regards refused to pay the combined 50 percent ($505.65) demanded of them.
Fenstermaker filed the present suit in October 1981. He contends on appeal that the trial court erredin failing to award him judgment against the Regard brothers for a total of $1707.03 (the mathematical difference between this total, and the total of the two invoices earlier discussed, lies in his withdrawal, after suit was filed, of an earlier offer to allow a 15 percent discount).
When this suit was filed, the Regard brothers answered it, denying that the claimed indebtedness was one contemplated to be shared by the partners. Consistent with that denial, Contractor Regard reconvened to get back what he had paid Fen-stermaker. Alternatively, should it happen that the court might disagree with their interpretation of the contractual distinction between professional services and expenses, the Regard brothers reconvened for items matching the nature of the claims in the principal demand, Contractor Regard for $6,377.77 in contracting expenses, and Attorney Regard for $1617.00 for legal expenses.
In rejecting all claims, the trial court found that the evidence presented was equally balanced on both sides and that, since Fenstermaker failed to prove his case by a preponderance of the evidence, he lost his principal demand. For the same reason, the Regard brothers lost their alternative reconventional demands. We agree with the trial court that these claims were properly rejected, but we do so for different reasons. We do not agree with the trial court that there, was no preponderance of the evidence.
*1140 We accept the trial court’s implied finding that both sides were equally credible and, to the extent that an understanding of what their contract was depended on what each side said it was, the evidence was evenly balanced. But the trial court gave no consideration in its oral reasons for judgment to the history of their dealings with one another, and when the undisputed history of their dealings with one another under the contract is considered, this tips the scales in favor of the Regards’ interpretation of what the agreement was. It was not until early 1980, more than a year and a half after the project began, and not until he had a disagreement with the Regards, that Fenster-maker began charging for engineering services. Until then, there had been no charge for engineering services, just as there had been none for legal, or contractor services.
These undisputed facts indicate that the parties had an agreement to provide their professional expertise at no charge to the project. The claims on which Fenstermaker’s principal demand rested, as well as the claims on which the Regard brothers’ alternative reconventional demands rested, were professional services. Under their agreement, they were not entitled to charge for those services. No party was entitled to judgment for those services, and the trial judge was correct in rejecting those demands, though not for the reasons given, and we affirm the judgment rejecting the principal demand and the alternative reconventional demands.
The reconventional demand of Contractor Regard for the return of the sum of $1,021.17 should have been granted. The trial court incorrectly characterized this re-conventional demand as an irrecoverable attempt to compromise a dispute. Although the reconventional demand language speaks of compromise, as a whole the demand indicates that Contractor Regard paid that money not to settle a dispute, but to avoid one, thinking he might have owed it, and it was not worth it to argue about it. He testified that the parties had a rather loose arrangement. Reimbursement for out-of-pocket expenses was frequently made upon mere oral request. Contractor Regard testified that he paid the sum requested by plaintiff for engineering costs because he did not want to jeopardize the Regency Square project over what he considered a relatively insignificant amount. He testified that he was surprised at plaintiff’s request, but paid it nevertheless.
The amount paid Fenstermaker by Contractor Regard was for the same services represented by one of the invoices sued for by Fenstermaker in his principal demand. Since we have found that the invoice was for services which were to have been provided the project at no charge under the parties’ agreement, it was not owed, and Contractor Regard is entitled to recover what he paid under the articles of the Civil Code dealing with payment of a thing not due. LSA-C.C. 2301-13.
For these reasons, the judgment of the trial court dismissing the principal demand of C.H. Fenstermaker and the alternative reconventional demands of Joe Regard and Dan Regard, is affirmed, as is the judgment of costs in the court below. The judgment rejecting Joe Regard’s reconven-tional demand for $1,021.17 is reversed, and judgment is rendered in favor of Joe Regard, and against C.H. Fenstermaker, for $1,021.17, with interest from judicial demand. Costs of this appeal are to be divided equally between C.H. Fenstermaker and Dan Regard.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.